UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: ETHICON, INC., POWER MORCELLATOR PRODUCTS LIABILITY LITIGATION | MDL No. 2652 |
| (This Document Relates to All Cases) | D. Kan. No. 15-md-2652-KHV |

**ORDER REGARDING ELECTRONICALLY STORED INFORMATION**

On December 7, 2015, the undersigned U.S. Magistrate Judge received a jointly proposed order to govern the production of documents, including electronically stored information ("ESI"). The court finds good cause to enter the proposed order.

A. **STIPULATED ESI PROTOCOL**

The Parties hereby agree to the following protocol for production of electronically stored information ("ESI") and paper ("hardcopy") documents. Subject to protective orders in this Action, this protocol governs all production in the matter. This protocol has the objective to facilitate the just, speedy, and inexpensive completion of discovery of ESI and hardcopy documents and to promote, whenever possible, the early resolution of disputes regarding the discovery of ESI without Court intervention. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this protocol.

1. No Designation of Discovery Requests

The Producing Party shall identify the source(s) of ESI that contain responsive documents (e.g., custodial files or database productions). Any custodial files or database productions will be produced with an index identifying the bates range of each production that corresponds to each custodian or database. Productions otherwise need not include indication of the document request(s) to which a document may be responsive.

2.  <u>Inadvertent Production</u>. The inadvertent production of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations, shall be governed by provisions contained in the Protective Order entered in this action.

**B.     ELECTRONICALLY STORED INFORMATION**

1.  <u>Production in Reasonably Usable Form</u>

a.  The parties shall produce electronically stored information in reasonably usable form. Except as stated in paragraphs B.2 and B.3 below or as agreed hereafter by the parties, such reasonably usable form shall be the single-page TIFF-image format with extracted text (or OCR text for documents that have been redacted or exist in a format in which extracting text is not possible) and all associated metadata set out in Attachment A, which is incorporated in full in this protocol. If the Receiving Party seeks production in native format of specifically identified ESI produced originally in TIFF-image form, the Producing Party shall respond reasonably and in good faith to any such request, and reasonable requests shall not be declined.

b.  <u>Redactions</u>. The producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity, that is governed by the European Data Privacy Directive or other applicable privacy law or regulation, that contains information that is a trade secret or other confidential research, development, or commercial information that is unrelated to the devices at issue in this action, or that any Protective Order which may be entered in this Action allows to be redacted. In preparing document families for production, the producing party also may redact entire attachments that are wholly non-responsive and may produce slipsheets in their place. Each redaction shall be indicated clearly.

c.  Upon request by Receiving Party, the Producing Party shall produce specifically identified documents in color. Upon request by Receiving Party, the Producing Party shall produce specifically identified Microsoft Word documents with track changes in color.  Documents with track changes will be identified as such in metadata.

2.  <u>Electronic Spreadsheets, Presentations, Desktop Databases, and Multimedia Files</u>

Electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), desktop databases (*e.g.*, Access), and audio/video multimedia files that have been identified as responsive shall be produced in native format, unless they are authorized to be redacted in accordance with Paragraph 1.b above. After such redactions, the Producing Party either shall produce the redacted file in the reasonably usable form set out in Attachment A or shall produce the redacted copy in native format.  The parties shall meet and confer regarding any redactions of documents that the parties have agreed to produce in native format, which would render the production in a non-native form.  Should a

producing party collect SAS, the parties shall meet and confer regarding production format prior to production. At this time Defendants do not believe there are SAS files responsive to foreseeable discovery in this litigation.

      3.      <u>Enterprise Databases and Database Management Systems</u>

To date, Defendants have collected, reviewed, and prepared for production a volume of electronically stored information from enterprise databases and database management systems (e.g., Oracle, SQL server, DB2, Documentum, Sharepoint). Upon the entry of a protective order, or if otherwise ordered to do so, Defendants shall produce ESI to the Plaintiffs' Steering Committee in the Multi-District Litigation. If the scope and format of this production is not suitable to the Plaintiffs' Steering Committee, the Parties shall meet and confer in an effort to resolve the issues. As to relevant enterprise databases and database management systems not yet collected, the Parties shall meet and confer regarding a mutually-agreeable scope and format of production, if possible.

      4.      <u>Additional Procedures for Native Format Files</u>

Any Party seeking to use, in any proceeding in this Action, files produced in native format shall do so subject to the following: The original production number and confidentiality designation shall be stamped on each page of any TIFF image or hardcopy document representing the original native-format file. Use of a file other than an electronic spreadsheet (*e.g.*, Excel) in native format, or use of a TIFF image or hardcopy document representing the original native-format file shall constitute a representation that the file being used is both an accurate and complete depiction of the original native-format file. Use of portions of an electronic spreadsheet (*e.g.*, Excel) in native format shall constitute a representation that the file being used is an accurate depiction of the original native-format file but need not constitute a representation that the portion being used is a complete file.

      5.      <u>Email Threading.</u>

Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files. A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread. The Producing Party will produce the most inclusive email thread and all prior or lesser included email threads that were collected and identified as responsive and not privileged; however, the prior or lesser included email threads will be grouped separately in a subsequent production that shall be made within thirty (30) days after each production containing the most inclusive email threads. Each Party that withholds or redacts lesser included email threads as privileged shall provide a privilege log that includes agreed-upon reasonably available objective metadata for both most inclusive and lesser included threads but need only describe the nature of the documents, communications, or tangible things not produced or disclosed for the most inclusive email threads. The parties will separately negotiate a privilege log

protocol. This agreement refers to portions of an email thread that exist as separate documents; email chains containing multiple emails within the same document may be logged as a single entry.

6. Avoidance of Duplicate Production

"Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (*i.e.*, both within a particular custodian's files and across all custodians). All deduplicated copies of documents will be reflected in the metadata delivered. De-duplication shall not break apart families and shall be performed at a family level. When the same Duplicate ESI exists in the files of multiple custodians, all of those persons shall be listed in the Custodian field identified in Paragraph A.14(c) of Attachment A. The Producing Party agrees that the presence of a custodian's name as an "additional custodian" in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.

C. **DOCUMENTS THAT EXIST ONLY IN HARDCOPY (PAPER) FORM**

Custodial documents that exist in the normal course of business only in hardcopy form shall be scanned and produced in accordance with the procedures set out in Attachment A. Family relationships, to the extent they exists, shall be maintained when scanning. The parties shall meet and confer regarding the production of any non-custodial sources that exist only in hardcopy form prior to production. The scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESI; specifically, the Producing Party is not required to create metadata fields for scanned hard copy documents. The Producing Party shall provide the agreed-upon metadata fields pertaining to scanned documents as set forth in the metadata table in Attachment A.

Dated December 9, 2015.

 s/ James P. O'Hara
 James P. O'Hara
 U.S. Magistrate Judge

**ATTACHMENT A**

A.1.   <u>Image Files</u>. Files produced in *.tif image format will be single page black and white *.tif files at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Each *.tif file will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

   a)   be consistent across the production;

   b)   contain no special characters; and

   c)   be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix that identifies the producing entity along with an 8 digit number (e.g. ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.   <u>File Text</u>. Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file. The text file shall contain image keys/Bates numbers for each page.

A.3.   <u>Foreign language documents</u>: All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has an English-language version of that document in its document collection that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and the translation in the ordinary course as they exist in relation to each other. Nothing in this agreement shall require a producing party to prepare a translation, certified or

otherwise, for foreign language documents that are produced in discovery or to identify which document is the English-language version of a document that exists in a foreign language.

A.4. Emails: Emails will be produced with the BCC line displayed.

A.5. <u>Word Processing Files</u>. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with tracked changes and comments showing. Supplemental requests for native format documents and color documents will be governed by Section 1 of the Protocol.

A.6. <u>Presentation Files</u>. To the extent that presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format, such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

A.7. <u>Spreadsheet or Worksheet Files.</u> To the extent that spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif image format, such *.tif images will display hidden rows, columns, and worksheets, if any, in such files.

A.8. <u>Parent-Child Relationships</u>. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.9. <u>Dynamic Fields</u>. Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.10. <u>English Language.</u> To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.11. <u>Embedded Objects.</u> Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

A.12.  A.11. <u>Compressed Files.</u> Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.13.  A.12. <u>Encrypted Files.</u> The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted.

A.14.  A.13. <u>Scanned Hardcopy Documents</u>

    a) In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically unitized).

    b) If a producing Party is requested, and agrees, to provide OCR text for scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file. The text file shall contain image keys/Bates numbers for each page.

    c) In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

A.15.  A.14. <u>Production Numbering</u>.

In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.16.  A.15. Data and Image Load Files.

a) <u>Load Files Required</u>. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

b) <u>Load File Formats</u>.

   i. Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

   ii. Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

   iii. Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

   iv. The Parties will cooperate to resolve any issues with the load files.

c) <u>Fields to be Included in Data Load File</u>. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the European Data Privacy Regulation, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

d) Metadata as Evidence. Information contained in the metadata produced shall be admissible evidence about the corresponding document.

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |

4

| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| --- | --- | --- | --- | --- |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| PARENTBATES | ABC00000001 | Yes | Yes | Begin Bates number for the parent email of a family (will not be populated for documents that are not part of a family) |
| CUSTODIAN(S) | Smith, John The format shall be LAST NAME, FIRST NAME. | Yes | Yes | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| OTHER CUSTODIAN(S) | Doe, Jane; Smith; Barney The format shall be LAST NAME, FIRST NAME. | Yes | Yes | Other custodian(s) that possessed the document or electronic file; multiple custodians separated by semicolon |
| NATIVEFILE | Natives\\\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FILEPATH | \My Documents | N/A | Yes | Original source filepath for the record |

| | \Document 1.doc | | | produced. |
|---|---|---|---|---|
| OTHER FILEPATHS(S) | Doe: \My Documents \Document 1.doc; Smith: \My Documents \Document 1.doc | N/A | Yes | Source filepath(s) for other custodian(s) |
| FILENAME | Document1 .doc | N/A | Yes | Name of original electronic file as collected. |
| OTHER FILENAME(S) | Document2 .doc; Document3 .doc | N/A | Yes | Name of electronic file for other custodian(s) |
| TITLE | | N/A | Yes | Title of the document |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith or Smith, John | N/A | Yes | Author information as derived from the properties of the document. |
| LASTAUTHOR | John Smith or Smith, John | | | User last saving the document. |
| DATECREATED | 10/09/2005 | Yes | Yes | Date that non-email file was created. For ESI, the date shall be provided as extracted from file system metadata. For scanned documents, the date shall be manually entered |

6

|  |  |  |  | where reasonably available. |
|---|---|---|---|---|
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Smith or Smith, John | N/A | Yes | "From" field extracted from email message |
| TO | John Smith or Smith, John | N/A | Yes | "To" field extracted from email message |
| CC | John Smith or Smith, John | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Smith or Smith, John | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyyformat) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| NUMATTACH | 3 | N/A | Yes | Number of attachments |
| ATTACH | Document2.doc; Document3.doc | N/A | Yes | Names of attachments; multiple attachments separated by semicolon |

7

| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
|---|---|---|---|---|
| REDACTED | Yes/No | Yes | Yes | Identifies whether a document contains redactions |
| MD5 (or SHA1) HASH VALUE | | | | |
| TEXTPATH | Text\\\.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| FILESIZE | | N/A | Yes | Size of application file document/email in KB |
| ConversationID/ MessageID | | N/A | Yes | From Outlook or Lotus Notes |
| Masterdate/emaildatsort (mm/dd/yyyy hh:mm:ss AM) | | N/A | Yes | Master sort date (e.g., for email attachments, the sent date) |
| THREAD PARTICIPANTS | | N/A | Yes | All participants in email thread |
| REDACTED | Yes/No | Yes | Yes | Identifies whether a document contains redactions |
| REDACTION REASON | Private; Privilege | Yes | Yes | Identifies the reason for a redaction. |
| TRACK CHANGES | Yes/No | Yes | Yes | Identifies if a Microsoft Word document has track changes turned on |

A.17. <u>Files Produced in Native Format</u>. Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively". To the

8

extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.18. Production Media. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Any production of ESI greater than 10 gigabytes shall be by hard drive. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: Volume name, production range(s), and date of delivery.

A.19. Encryption of Production Media. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media. The receiving parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the receiving parties therefore agree to follow the strictest security standards in guarding access to said data.